NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SAMIRKUMAR SHAH, | |
| Petitioner | Civ. No. 22-6306 (RMB) |
| v. | **OPINION** |
| WARDEN, FCI FORT DIX, | |
| Respondent | |

RENÉE MARIE BUMB, CHIEF UNITED STATES DISTRICT JUDGE

This matter comes before the Court upon the filing of an amended petition[1] for writ of habeas corpus under 28 U.S.C. § 2241 by Petitioner Samirkumar Shah, a prisoner confined in low security in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"). (Am. Pet., Dkt. No. 8.) Petitioner alleges the Bureau of Prison's ("BOP") deliberate indifference to his risk of severe illness or death if infected by COVID-19 violates the Eighth Amendment and entitles him to release from prison to home confinement. Respondent opposes relief on several grounds: (1) lack of jurisdiction; (2) failure to exhaust administrative remedies; and (3) on the merits of the Eighth Amendment claim. (Answer, Dkt. No. 19.) Petitioner filed a reply brief (Dkt. No. 23), followed by several supplemental letters.

---

[1] On February 7, 2023, this Court dismissed, for lack of jurisdiction, Petitioner's original § 2241 petition, challenging the BOP's determination of his security classification and denial of his request for release to home confinement. (Opinion and Order, Dkt. Nos. 6, 7.) Petitioner subsequently filed the amended petition at issue here.

(Dkt. Nos. 24-27.)   For the reasons discussed below, the Court will dismiss the petition for lack of jurisdiction.   Alternatively, the Court would dismiss the petition without prejudice, for failure to exhaust administrative remedies.

I.     THE AMENDED PETITION

Petitioner, a convicted and sentenced federal prisoner confined in FCI Fort Dix, low security asserts habeas jurisdiction under 28 U.S.C. § 2241, and alleges his conditions of confinement violate the Eighth Amendment.   (Am. Pet., Dkt. No. 1 at 2.)   Petitioner, a former cardiologist convicted of health care fraud, arrived at FCI Fort Dix on September 21, 2021, amidst the COVID-19 pandemic.   (*Id.* at 3.)   Early in the pandemic, for public health safety, the CDC deemed face masks and social distancing necessary to reduce the spread of the novel virus.   (*Id.* at 3-4.)   In March 2020, the BOP released an action plan to address the threat of COVID-19 in BOP facilities.   (*Id.* at 5.)   Shortly thereafter, the Attorney General, through the CARES ACT,[2] granted the BOP discretionary authority to release federal prisoners to home confinement to protect them from COVID-19.   (*Id.*)   On October 15, 2021, weeks after Petitioner's arrival at FCI Fort Dix, the warden denied Petitioner's request for release under the CARES ACT.   (Declaration of Samirkumar Shah ("Shah Decl."), Dkt. No. 23-2 ¶ 8.)

Petitioner was housed in a twelve-man cell, sharing one sink and one toilet with eleven other inmates, with their bunks in close quarters.   (Am. Pet., Dkt. No. 8

---

[2] Pub. L. No. 116-36, § 12003(b)(2), 134 Stat. 281, 516 (2020).

at 6-7; Shah Decl., Dkt. No. 23-2 ¶ 15.)   COVID-19 had spread in Petitioner's cell after inmates were exposed to the virus and returned to the cell without knowing they had contracted the virus.   (Am. Pet., Dkt. No. 8 at 11; Shah Decl., Dkt. No. 23-2 ¶ 15.)   Petitioner, who was 59-years old at the time of filing the amended petition, has been diagnosed with hypertension, diabetes and obesity (BMI 32). (Am. Pet., Dkt. No. 8 at 2, 15-16; Shah Decl., Dkt. No. 23-2 ¶ 19, n.5.)   According to the Centers for Disease Control and Prevention ("CDC"), these conditions that Petitioner suffers from increase his risk of severe illness or death from COVID-19. (*Id.* at 15.)

Petitioner had the first dose of the Pfizer vaccine on July 7, 2021, before his incarceration, and suffered side effects of fever, pain, severe tinnitus, and significant hearing loss.   (*Id.* at 15; Shah Decl., Dkt. No. 23-2 ¶ 6.)   Petitioner's adverse reaction was recorded by the CDC, and it was determined he was not a candidate for further vaccination.   (*Am. Pet.*, Dkt. No. 1 at 15.)   Petitioner contends the BOP, by denying his request to be transferred to home confinement, was deliberately indifferent to the risk that he will suffer severe illness or death from COVID-19 in FCI Fort Dix.   (Am. Pet., Dkt. No. 8 at 16.)

II.   **THE ANSWER**

Respondent filed an answer to the amended petition, opposing habeas relief on the grounds of jurisdiction, failure to exhaust administrative remedies, and on the merits of Petitioner's Eighth Amendment claim.   (Answer, Dkt. No. 19.)   As to

jurisdiction, Respondent argues that the threat of COVID-19 in FCI Fort Dix does not present a "core" habeas issue, and the current conditions at FCI Fort Dix do not present an exceptional circumstance requiring release of prisoners who are medically vulnerable to COVID-19.  (Answer, Dkt. No. 19 at 21-7.)[3]  Respondent asserts Petitioner reported to Health Services staff at FCI Fort Dix that he had the second dose of the Pfizer vaccine in July 2021.  (Declaration of Philip Warzyniak, Dkt. No. 19-2, Exhibits, Dkt. No. 20.)[4]  Additionally, Respondent contends that the amended petition was not ripe when filed because Petitioner had not exhausted administrative remedies under the mandatory exhaustion requirement of 42 U.S.C. § 1997(e)(a) or the prudential exhaustion requirement for habeas petitions under 28 U.S.C. § 2241.  (Answer, Dkt. No. 19 at 27-32.)[5]  Alternatively, Respondent contends Petitioner's

---

[3] Respondent submitted the Declaration of Danielle DiBello ("DiBello Decl."), Case Management Coordinator of FCI Fort Dix, who described the BOP's efforts to protect the health of inmates and staff at FCI Fort Dix beginning August 16, 2021, with the COVID-19 Modified Operations Matrix ("the Matrix").  (Dkt. No. 19-1 ¶¶ 4-6.)  The Matrix is based on guidance from the CDC, OSHA and DOJ.  (*Id.*, ¶ 7.)  The Matrix is publicly available at https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp.  Furthermore, as of June 11, 2023, the BOP no longer has the authority to release inmates to home confinement under the CARES Act, because the President of the United States declared the national pandemic emergency over.   (*Id.* ¶ 31.)

[4] The only health condition noted on Petitioner's health screen upon his entry into FCI Fort Dix is history of hypertension.  (Exhibit, Dkt. No. 20.)  The record indicates that Petitioner denied having diabetes.  (*Id.*)  The health screen does not indicate Petitioner's body mass index used to diagnose obesity.   In his reply brief in support of his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) filed in Petitioner's sentencing court, a copy of which Petitioner filed in this action, Petitioner contested the accuracy of his BOP medical records regarding his vaccination status and diagnoses.  (Letter, Dkt. No. 24 at 5-7.)

[5] *See* Declaration of Corrie Dobovich, Dkt. No. 19-3.

Eighth Amendment claim fails on the merits because BOP took reasonable steps to address the threat of COVID-19 by developing the "Modified Operations Matrix" to reduce the spread of COVID-19. Petitioner's projected release date, assuming application of all good time and First Step Act time credits, is October 23, 2025. (DiBello Decl., Dkt. No. 19-1, Ex. A at 16.)

### III.   PETITIONER'S REPLY BRIEF AND SUPPLEMENTAL LETTERS

In his reply brief, Petitioner acknowledges that although the pandemic was recently declared over, new variants are impervious to the vaccine. (Reply Brief, Dkt. No. 23 at 2.) Petitioner submitted his own declaration, outlining the COVID-19 conditions at FCI Fort Dix as of September 2023. (Shah Decl., Dkt. No. 23-2.) In his declaration, Petitioner states that he suffered a severe reaction to the first dose of the Pfizer vaccine, administered to him on July 7, 2021. (*Id.* ¶ 6.) On July 13, 2021, Petitioner saw Dr. Richard Paul Bonfiglio, who treated Petitioner for his adverse reaction to the vaccine. (*Id.*, Exhibit A.) After his treatment, Petitioner was determined not to be a candidate for further vaccination. (*Id.* ¶ 6.)[6] Petitioner never reported that he had received the second dose of the Pfizer vaccine. (*Id.*)

When Petitioner arrived at FCI Fort Dix, he was placed in quarantine. (*Id.* ¶ 7.) After quarantine, he was moved to a twelve-man cell, sharing one sink and toilet with eleven others, in close proximity. (*Id.*) Petitioner spends the majority of his

---

[6] Dr. Bonfiglio acknowledged that he treated Petitioner for vaccine side effects, but he does not state Petitioner is not a candidate for further vaccination. (Exhibit A, Dkt. No. 23-1.)

time on his bunk in the cell, but social distancing within the cell is impossible. (Petitioner's Declaration, Dkt. No. 23-2, ¶ 7.) Inmates in Petitioner's cell have contracted the virus and unwittingly spread it to others. (*Id.* ¶¶ 7, 15.) When this occurred, none of the other inmates in the cell were tested for COVID-19 or placed in quarantine as a preventative measure, or even provided a face mask. (*Id.*)

On October 15, 2021, weeks after Petitioner's arrival at FCI Fort Dix, the warden denied Petitioner's request for transfer to home confinement or to the minimum security camp at FCI Fort Dix. (*Id.* ¶ 8.) Several months later, Petitioner was examined by the prison's doctor, Dr. Sood, who recommended Petitioner's transfer to home confinement based on his risk of serious complications from COVID-19. (*Id.* ¶ 9.) Dr. Sood's recommendation was ignored. (*Id.*) In March 2023, Petitioner once again sought release to home confinement from the warden, and the warden denied his request. (*Id.* ¶ 10.)

At the time of filing the reply brief, there was an exposed sewage leak in Petitioner's cell, and there had been no attempts to repair it. (*Id.* ¶ 16.) The ventilation is very poor, and the cell and housing area were infested with roaches and insects. (*Id.*) FCI Fort Dix remains on partial lockdown because the virus continues to spread, and this has caused frustration and outbreaks of violence. (*Id.* ¶ 17.) Based on these conditions, Petitioner remains at his bunk to protect himself. (*Id.*)

On October 2, 2023, Petitioner submitted to the Court a copy of his reply brief

in support of his motion for compassionate release, filed in the Western District of Pennsylvania. (Letter, Dkt. No. 24.) According to Petitioner's criminal docket, Petitioner's motion for compassionate release remains pending before his sentencing court.[7] On October 19, 2025, Petitioner submitted another letter to the Court, stating there were nine new cases of COVID-19 at FCI Fort Dix, and one inmate was hospitalized with serious complications. (Letter, Dkt. No. 25.) Petitioner is in fear for his own life. (*Id.*) On October 25, 2023, Petitioner submitted a supplemental motion to the Court to call attention to the decision in *United States v. Amerson*, 2023 U.S. Dist. LEXIS 116075 (E.D.N.Y.), where a prisoner similarly situated to Petitioner was granted compassionate release based on COVID-related conditions of confinement. (Letter, Dkt. No. 4.)[8] Petitioner alleges that as of October 15, 2023, forty inmates at FCI Fort Dix tested positive for COVID-19 in one day, and eight inmates were hospitalized. (Letter, Dkt. No. 26 at 11.)

## IV. DISCUSSION

### A. Jurisdiction

Federal habeas petitions under 28 U.S.C. § 2241 based on unconstitutional conditions of confinement are cognizable only in extreme cases, where release from

---

[7] *U.S. v. Shah*, 2:16-CR-00110-DSC-1 (W.D. Pa.) Available on the Public Access to Court Electronic Records ("PACER") at www.pacer.gov.

[8] The analysis for granting a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A) is meaningfully different from the analysis of jurisdiction over an Eighth Amendment conditions of confinement claim under 28 U.S.C. § 2241. Cf. *United States v. Amerson*, No. 05-CR-0301(JS), 2023 WL 4497767, at *7 (E.D.N.Y. July 12, 2023) and *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 324-25 (3d Cir. 2020).

confinement is the only remedy to cure the constitutional violation alleged. *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 324 (3d Cir. 2020). The conditions of confinement for immigration detainees in York County Prison and Pike County Correctional Facility during the beginning of the COVID-19 pandemic in March 2020 presented such extreme conditions. *Hope*, 972 F.3d at 324-25. The pandemic was unprecedented and radically transformed our everyday lives because there was no treatment or cure for a potentially deadly virus. *Id.* at 330 (quoting the Government's Brief). Even under such circumstances, the Third Circuit held that the Constitution does not require the Government to entirely eliminate the risk of prisoners contracting COVID-19. *Id.*

At the time the answer was filed, as currently,[9] FCI Fort Dix was operating at Level 1 Operations under the Matrix. (DiBello Decl., Dkt. No. 19-1 ¶ 8.) Under Level 1, "any time an inmate tests positive for COVID-19 in a housing unit, the positive inmate is moved to an isolation unit." (*Id.* ¶ 10.) "Inmates in isolation units do not leave their housing units." (*Id.* ¶ 12.) In Level 1 Operations, a face covering is required for all those involved in visitation, and double masking or KN95 masking is required for transports.[10] BOP has offered all eligible staff and inmates the COVID-19 vaccine. (DiBello Decl. at ¶ 13.) "BOP views inmates as eligible

---

[9] Available at https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited November 15, 2023).

[10] https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp.

for vaccination unless medical circumstances counsel against vaccination." (*Id.*) "Newly eligible inmates, new arrivals, and inmates that have previously declined a vaccine will be offered the vaccine as additional supplies are received." (*Id.*)

Low infection rates paired with high vaccination rates are significant factors in assessing prison conditions of confinement. *See United States v. Caraballo*, No. 14-cr-255 (ES), 2022 WL 60697, at *7 (D.N.J. Jan. 6, 2022) (discussing the importance of vaccines and the "the low infection rate and the high vaccination rate" at FCI Fort Dix); *United States v. Guzman*, No. 19-cr-431 (BRM), 2022 WL 228288, at *6 (D.N.J. Jan. 26, 2022) (same). As of November 13, 2023, BOP has one open case of COVID-19 and is operating under Level 1 of the Matrix.[11] The low rate of transmission at FCI Fort Dix, the steps BOP has taken to prevent the spread of the virus, and BOP's readiness to increase preventative measures if the transmission rate increases belie Petitioner's claim of extreme conditions of confinement. *See Folk v. Warden Schuylkill FCI, No.* 23-1935, 2023 WL 5426740, at *1 (3d Cir. Aug. 23, 2023) (per curiam) (finding changed circumstances in prison including the petitioner's natural immunity and access to effective vaccines, no longer warranted conclusion that conditions of confinement were extreme); *Perri v. Warden of FCI Fort Dix*, No. CV 20-13711 (RBK), 2023 WL 314312, at *9 (D.N.J. Jan. 19, 2023) ("the current circumstances in this case do not present 'the extraordinary circumstances that

---

[11] See supra n. 7.

existed in March [of] 2020 because of the COVID-19 pandemic'") (quoting *Hope*, 972 F.3d at 324–25).

Nonetheless, Petitioner asserts that after some of his cellmates tested positive for COVID-19, the remaining cellmates were not tested and not provided with masks, putting him at great risk.[12] Accepting this allegation as true, release from prison is not the only remedy to protect Petitioner. Petitioner could request additional COVID-19 testing and protective face coverings from staff through the BOP administrative remedy program or through an action for injunctive relief. *See Goodchild v. Ortiz*, No. CV 21-790 (RMB), 2021 WL 3914300, at *15 (D.N.J. Sept. 1, 2021) (dismissing § 2241 habeas petition for lack of jurisdiction where injunctive relief was available to remedy alleged Eighth Amendment violation); *accord Pinson v. Carvajal*, 69 F.4th 1059, 1074 (9th Cir. 2023) (holding court lacked jurisdiction under § 2241 where federal prisoner could seek injunctive relief to remedy unconstitutional conditions).

Moreover, habeas corpus is not the only avenue for Petitioner's release to home confinement. *See Wragg v. Ortiz*, 462 F. Supp. 3d 476, 505 (D.N.J. 2020) (finding exceptional circumstances permitting federal prisoners to challenge conditions of confinement under 28 U.S.C. § 2241 did not exist because there were

---

[12] According to the Matrix, "General Modifications" are in effect regardless of the facilities' current operation level, and includes COVID-19 testing of asymptomatic but exposed inmates. See supra n. 8. BOP may also require face coverings indoors, regardless of vaccination status. *Id.*

other avenues available for immediate relief); *accord Mescall v. Hemingway*, No. 20-1857, 2021 WL 4025646, at *1 (6th Cir. Apr. 7, 2021). Here, Petitioner's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A) remains pending before his sentencing court.[13] For these reasons, the Court finds that it lacks jurisdiction over Plaintiff's Eighth Amendment claim under 28 U.S.C. § 2241. In the alternative, discussed below, the Court would dismiss the habeas petition for failure to exhaust administrative remedies under § 2241.

### B. Exhaustion of Administrative Remedies

There is a judicially created requirement for exhaustion of administrative remedies before a prisoner may bring a habeas petition under § 2241. *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 761 (3d Cir. 1996). There are three reasons for the exhaustion requirement: (1) it facilitates judicial review to first allow the appropriate agency to develop a factual record and apply its expertise; (2) it conserves judicial resources by permitting an agency to have the first opportunity to grant the relief requested; and (3) it fosters administrative agency autonomy by providing agencies with the opportunity to correct their own errors. *Id.* at 761-62. Exhaustion may be waived under circumstances where it will not promote any of the goals of administrative exhaustion. *See Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)); *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 239 n.2 (3d Cir. 2005) (finding exhaustion

---

[13] See supra n. 6 (last visited November 15, 2023).

futile where issue raised was of statutory construction).

At the first step of the BOP administrative remedy program, an inmate may seek informal relief from staff for any issue relating to any aspect of his confinement. (Declaration of Corrie Dobovich, Dkt. No. 19-3, citing 28 C.F.R. 541.10 *et seq.*) That failing, a prisoner must seek formal relief from the warden, and if dissatisfied with the warden's response, a prisoner may appeal first to the regional level, and if unsuccessful, then to the BOP Central Office. (*Id.*) At the time Respondent filed an answer to the petition, Petitioner had not exhausted his appeals of the warden's denial of his request for home confinement based on Covid-19 conditions of confinement. (*Id.*)

In *Hope*, the Third Circuit recognized the importance of considering the expertise of correctional-facility administrators. 972 F.3d at 326–27. Petitioner deprived the court of that opportunity by not exhausting his administrative appeals. Petitioner concedes he failed to exhaust his administrative remedies and instead argues that he should not be required to appeal the warden's decision because his risk of death from contracting COVID-19 presents too grave a danger to engage in a lengthy process. Unlike the beginning of the pandemic, the danger of severe consequences from contracting COVID-19 have decreased. In addition to vaccines, there are now treatments available to improve COVID-19 outcomes, even for those who are medically vulnerable.[14] As noted, Petitioner is also pursuing

---

[14] This Court takes judicial notice under Federal Rule of Evidence 201(b) of the CDC

compassionate release through his sentencing court under 18 U.S.C. § 3582(c)(1)(A), and a sentencing court is in the best position to balance a convicted prisoner's interest in protecting his health with any countervailing societal interests in his incarceration. Assuming jurisdiction under § 2241, the Court would dismiss the § 2441 habeas petition for failure to exhaust administrative remedies.[15]

## V.   CONCLUSION

For the reasons discussed above, the Court dismisses the habeas petition for lack of jurisdiction, and in the alternative, the Court would dismiss the petition for failure to exhaust administrative remedies. The Court need not reach the merits of Petitioner's Eighth Amendment claim.

An appropriate order follows.

DATE:   **November 17, 2023**

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
Chief United States District Judge

---

website, "COVID-19 Treatments and Medications" (updated October 4, 2023), available at https://www.cdc.gov/coronavirus/2019-ncov/your-health/treatments-for-severe-illness.html.   "If you have COVID-19 and are more likely to get very sick from COVID-19, treatments are available that can reduce your chances of being hospitalized or dying from the disease."

[15] The Court need not address Respondent's argument that Petitioner failed to exhaust administrative remedies under the PLRA, 42 U.S.C. § 1997e(a).